*ELECTRONICALLY FILED*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**AT LEXINGTON**

| | |
|---|---|
| **KENTUCKY WATERWAYS ALLIANCE and SIERRA CLUB,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**KENTUCKY UTILITIES CO.,**<br><br>**Defendant.** | **No.**<br><br><br>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |

<u>**NATURE OF THE CASE**</u>

1.      Plaintiffs Kentucky Waterways Alliance and Sierra Club bring this citizen enforcement action against Defendant Kentucky Utilities Company ("KU") for violations of the Clean Water Act ("CWA"), 33 U.S.C. §§ 1311 and 1342, at the E.W. Brown Generating Station ("E.W. Brown Station") near Harrodsburg, Kentucky, and for contributing to the past and present handling, storage, treatment, transportation, and/or disposal of coal combustion residuals ("CCR") at the E.W. Brown Station that may present an imminent and substantial endangerment to human health and the environment under the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972(a)(1)(B).

2.      KU is in violation of the CWA because the company illegally discharges pollutants without authorization in a permit.  Although KU holds a permit that authorizes the company to discharge pollutants from the E.W. Brown Station to Curds Inlet on Herrington Lake through three external points at the plant (known as "outfalls"), KU has also discharged, and is

discharging on an ongoing basis, into HQ Stream—a jurisdictional surface water that flows into Herrington Lake at another one of the Lake's inlets, known as HQ Inlet.  KU's discharges of pollutants into HQ Stream at the E.W. Brown Station are not authorized by any permit and are contrary to the limited authorization to discharge within KU's discharge permit for the E.W. Brown Station.

3.      In addition, as a result of KU's handling, storage, treatment, transportation, and/or disposal of CCR waste at the E.W. Brown Station site, toxic constituents of CCR have contaminated groundwater, surface water, and underlying sediments in the vicinity of the plant, including in Herrington Lake and nearby streams.  This contamination may present an imminent and substantial endangerment to aquatic life, other wildlife, and the people who make use of those waters.

4.      Through this suit, Plaintiffs seek to compel KU:

a.      to cease all unpermitted discharges of pollutants at the E.W. Brown Station;

b.      to pay civil penalties for its violations of the CWA; and

c.      to take all actions necessary to eliminate the endangerment to human health and the environment in and around the E.W. Brown Station site, including by determining and implementing the most expeditious, cost-effective, and environmentally sound means both:

i.      to eliminate the ongoing migration of CCR pollutants into groundwater, surface water, and sediments; and

ii.     to fully abate the endangerment associated with CCR pollutants that have already migrated into groundwater, surface water, and sediments near the site.

## JURISDICTION AND VENUE

5.      This action arises under the citizen suit provisions of the CWA, 33 U.S.C. §

1365(a), and RCRA, 42 U.S.C. § 6972(a).  This Court has jurisdiction pursuant to the CWA and

RCRA, as well as 28 U.S.C. § 1331 (the federal question statute).  This Court has jurisdiction

over the parties.  This Court may award Kentucky Waterways Alliance and Sierra Club

declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02.

### Claim arising under the Clean Water Act

6.      The CWA's citizen suit provision authorizes any affected citizen to commence a

civil action against anyone "who is alleged to be in violation of . . . an effluent standard or

limitation."  33 U.S.C. § 1365(a)(1).  The term "violation of . . . an effluent standard or

limitation" means, *inter alia*, a discharge of a pollutant without authorization in a National

Pollutant Discharge Elimination System ("NPDES") permit, or any violation of a NPDES

"permit or condition thereof."  *Id.* § 1365(f)(1), (6); *see also id.* §§ 1311(a), 1342.  The CWA

citizen suit provision, *id.* § 1365(a), empowers the Court to enforce such an effluent standard or

limitation and to impose any appropriate civil penalties under section 309(d) of the Act, *id.* §

1319(d).

7.      Plaintiffs have provided KU with notice of the CWA violations alleged in this

Complaint and of their intent to sue KU, as required by 33 U.S.C. § 1365(b)(1)(A).  A copy of

this notice letter is attached as Exhibit A and was sent to KU and its registered agent on

November 2, 2015.  Plaintiffs also sent copies of the notice letter to the Administrator and the

Regional Administrator of the U.S. Environmental Protection Agency ("EPA") and to the

Kentucky Energy & Environment Cabinet, Department of Environmental Protection ("KDEP").

8.      The notice letter of November 2, 2015, superseded an earlier notice letter provided to KU by Sierra Club.  The earlier letter described the CWA violations alleged in this Complaint and Sierra Club's intent to sue KU, as required by 33 U.S.C. § 1365(b)(1)(A).  A copy of this earlier notice letter is attached as Exhibit B and was sent to KU and its registered agent on October 20, 2015.  Sierra Club also sent copies of the notice letter to the Administrator and the Regional Administrator of the EPA and to KDEP.

9.      More than sixty days have passed since the November 2, 2015, notice letter was served, and, based on information and belief, the violations outlined in the notice letter and alleged in this Complaint are continuing at this time and are likely to persist.

10.     Neither EPA nor KDEP has commenced or is diligently prosecuting a civil or criminal action to redress the asserted violations as described in 33 U.S.C. § 1365(b)(1)(B).

11.     The E.W. Brown Station is located in this judicial district.  Therefore, venue in this judicial district is appropriate pursuant to 33 U.S.C. § 1365(c)(1).

**Claim arising under the Resource Conservation and Recovery Act**

12.     RCRA's citizen suit provision authorizes any affected citizen to commence a civil action against anyone "including any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility, who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment."  42 U.S.C. § 6972(a)(1)(B).  The RCRA citizen suit provision, *id.* § 6972(a), empowers the Court to "restrain" any person referred to in paragraph (1)(B) and to order that person "to take such other action as may be necessary."

4

13.     Plaintiffs have provided KU with notice of the endangerment alleged in this Complaint and of their intent to sue KU, as required by 42 U.S.C. § 6972(b)(2)(A).  A copy of this notice letter is attached as Exhibit C and was sent to KU and its registered agent on October 26, 2016.  Additionally, Plaintiffs sent copies of the notice letter to the Administrator and the Regional Administrator of the EPA and to KDEP.

14.     More than ninety days have passed since the October 26, 2016, notice letter was served, and, based on information and belief, the endangerment described in the notice letter and alleged in this Complaint is continuing at this time and is likely to persist.

15.     Neither EPA nor KDEP has commenced or is diligently prosecuting a civil or criminal action, is engaging in a removal action, has incurred costs to initiate a Remedial Investigation and Feasibility Study, has obtained a court order or issued an administrative order for a removal action, or is proceeding with a remedial action to redress the asserted endangerment, as described in 42 U.S.C. § 6972(b)(2)(B), (C).

16.     The E.W. Brown Station is located in this judicial district.  Therefore, venue in this judicial district is appropriate pursuant to 42 U.S.C. § 6972(a).

## PARTIES

17.     Plaintiff Kentucky Waterways Alliance ("KWA") is a nonprofit organization with more than 600 members dedicated to using, enjoying, protecting, and restoring the water resources of the Commonwealth of Kentucky for recreational, aesthetic, and other beneficial purposes.  KWA was incorporated in 1993 and has worked for more than 24 years for better protections for Kentucky waterways and a healthier future for Kentucky communities.

18.     Plaintiff Sierra Club is a national nonprofit organization of approximately 814,000 members dedicated to exploring, enjoying, and protecting the wild places of the earth; to

practicing and promoting the responsible use of the earth's ecosystems and resources; to educating and enlisting humanity to protect and restore the quality of the natural and human environment; and to using all lawful means to carry out these objectives. Sierra Club's concerns include protecting water quality both nationally and locally, and protecting the health of the people and the wildlife connected with our waters. Preserving the health of the nation's waters has been a primary goal of Sierra Club since its founding in 1892. The Cumberland Chapter of Sierra Club has approximately 6,218 members in the Commonwealth of Kentucky.

19.     Individual members of KWA and Sierra Club live near, and recreate in and around, Herrington Lake, including in the vicinity of the E.W. Brown Station. These individuals' use and enjoyment of Herrington Lake is harmed by KU's unauthorized discharges of pollutants at the E.W. Brown Station and the resulting degradation to water quality in the Lake. Plaintiffs' members also reasonably believe that KU's past and present handling, storage, treatment, transportation, and/or disposal of CCR at the E.W. Brown Station site may endanger their health, the health of their families and communities, and their environment (including the fish, other aquatic life, and wildlife they observe, consume, or otherwise enjoy). These members have a strong, direct, and immediate interest in ensuring that the water quality and environmental health of Herrington Lake support full use and appreciation of the Lake, and that their neighbors on the Lake are using this shared resource in a manner consistent with state and federal law.

20.     The injuries suffered by the respective individual members of KWA and Sierra Club are traceable to KU's unauthorized discharges from the E.W. Brown Station, because the unauthorized discharges add pollution to HQ Stream, which empties into Herrington Lake, contributing to the degradation of Herrington Lake's water quality. Plaintiffs' members'

interests have already been adversely affected by unauthorized discharges from the E.W. Brown Station, and they will continue to be negatively impacted by such discharges.

21.    Plaintiffs' members' injuries are also traceable to contamination that is the result of KU's handling, storage, treatment, transportation, and/or disposal of CCR waste at the E.W. Brown Station site.  CCR pollutants enter groundwater and surface water, and their underlying sediments, from several sources at the E.W. Brown Station site, including KU's coal ash ponds, sluice channels and other conveyances of CCR waste, and other facilities located at the site. CCR waste constituents in Herrington Lake, nearby streams, and the sediments underlying those bodies of water are sources of ongoing exposure of pollutants to fish, other aquatic life, and wildlife, as well as to the Plaintiffs' members who make use of those waters.

22.    Plaintiffs' requested declaratory and injunctive relief would mandate that KU both cease unauthorized discharges of pollutants to comply with the CWA, and take all necessary steps to abate the imminent and substantial endangerment to human health and the environment. Plaintiffs also seek the imposition of civil penalties under the CWA to deter future violations. Plaintiffs' requested relief will redress Plaintiffs' members' injuries.  These injuries will not be redressed except by an order from this Court requiring KU to take immediate and substantial action.

23.    Defendant KU is a public utility company that owns and operates the E.W. Brown Station.  KU's principal office is located at 1 Quality Street, Lexington, Kentucky 40507.  KU is incorporated in the Commonwealth of Kentucky.  KU is a corporate affiliate of Louisville Gas & Electric Company ("LG&E"), a public utility company incorporated in the Commonwealth of Kentucky.  Both KU and LG&E are subsidiaries of the PPL Corporation.

## LEGAL BACKGROUND

**The Clean Water Act**

24.     The CWA is the principal federal statute enacted to protect the quality of the waters of the United States.  The stated objective of the CWA is "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters" by, among other things, achieving the goal of "eliminat[ing]" "the discharge of pollutants into the navigable waters."  33 U.S.C. § 1251(a), (a)(1).

25.     Section 301(a) of the CWA, *id.* § 1311(a), provides that "the discharge of any pollutant . . . shall be unlawful" unless, in pertinent part, the discharge is made pursuant to and is authorized by a NPDES permit, as provided by section 402 of the CWA, *id.* § 1342.  A NPDES permit not only limits the amount or concentration of pollutants that can be discharged into navigable waters, it also requires that a discharger monitor and publicly report the amount or concentration of pollutants it discharges.  NPDES permits are issued for fixed terms that may not exceed five years in length.  *Id.* § 1342(b)(1)(B).

26.     The CWA defines "discharge of a pollutant" to include, *inter alia*, "any addition of any pollutant to navigable waters from any point source."  *Id.* § 1362(12).

27.     The CWA defines "pollutant" to include, among other things, "solid waste," "chemical wastes," and "industrial . . . waste discharged into water."  *Id.* § 1362(6).

28.     The CWA defines "navigable waters" to mean "the waters of the United States." *Id.* § 1362(7).

29.     The CWA defines "point source" to include "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well,

discrete fissure, [or] container . . . from which pollutants are or may be discharged." *Id.*
§ 1362(14).

30.    The CWA provides that a State may establish its own permit program, and after
receiving EPA's approval, may issue NPDES permits.  *Id.* § 1342(b).  EPA first approved
Kentucky's NPDES program (the Kentucky Pollutant Discharge Elimination System program, or
"KPDES") covering many of the waters of Kentucky, including HQ Stream and Herrington
Lake, on September 30, 1983.  *See* 48 Fed. Reg. 45,597 (Oct. 6, 1983).

31.    Any affected citizen may commence a civil action against a defendant "who is
alleged to be in violation of . . . an effluent standard or limitation" under the CWA citizen suit
provision, 33 U.S.C. § 1365(a)(1).  The term violation of "an effluent standard or limitation"
includes any discharge of a pollutant that is not authorized by a NPDES permit, as well as any
violation of any NPDES "permit or condition thereof."  *Id.* § 1365(f); *see also id.* §§ 1311(a),
1342.  The CWA citizen suit provision, *id.* § 1365(a), empowers the Court to enforce such an
effluent standard or limitation and to impose any appropriate civil penalties under section 309(d)
of the CWA, *id.* §1319(d).  The action "may be brought . . . only in the judicial district" in which
the alleged violation occurs.  *Id.* § 1365(c)(1).  Before commencing the action, the plaintiff must
first give notice of its claims to the defendant and to federal and state government officials, and it
may bring the action 60 days after notice is given.  *Id.* § 1365(b)(1)(A).

**The Resource Conservation and Recovery Act**

32.    RCRA is the principal federal statute governing the handling, storage, treatment,
transportation, and disposal of solid and hazardous waste.  In enacting RCRA, Congress
recognized that "disposal of solid waste and hazardous waste in or on the land without careful

planning and management can present a danger to human health and the environment." 42 U.S.C. § 6901(b)(2).

33.     RCRA defines "solid waste" to mean, *inter alia*, "any garbage, refuse, sludge from a waste treatment plant, water supply treatment plant, or air pollution control facility and other discarded material." *Id.* § 6903(27).

34.     RCRA entitles citizens to bring suit against "any person . . . who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment." *Id.* § 6972(a)(1)(B).

35.     The RCRA citizen suit provision for imminent and substantial endangerment, *id.* § 6972(a), empowers the Court to "restrain" any person referred to in paragraph (1)(B) and to order that person "to take such other action as may be necessary" to abate an imminent and substantial endangerment.  The action "shall be brought" in the judicial district in which the alleged endangerment may occur. *Id.*  Before commencing the action, the plaintiff must first give notice of its claims to the defendant and to federal and state government officials, and it may bring the action 90 days after notice is given. *Id.* § 6972(b)(2)(A).

## FACTUAL BACKGROUND

### The Ash Ponds at the E.W. Brown Station

36.     The E.W. Brown Station is owned and operated by Defendant KU.

37.     The E.W. Brown Station includes a three-unit coal-fired power plant situated on the west side of the Dix River, beside the hydroelectric dam that created Herrington Lake.  The facility is located at 815 Dix Dam Road, Harrodsburg, KY 40330-9282, in Mercer County.

38.     Since the 1950s, the E.W. Brown Station has burned coal and generated CCR through the combustion process.  The CCR generated at the E.W. Brown Station consists principally of bottom ash and fly ash.  Fly ash is a very fine, powdery material that is carried up the smokestack by exhaust gases.  Bottom ash is made up of the larger coal ash particles that fall to the bottom of the furnace.

39.     KU disposes of, and/or stores, the CCR waste generated by the plant in the coal ash ponds located at the E.W. Brown Station site.  KU accomplishes this by conveying the CCR waste from the coal boilers through a sluice system that channels waterborne CCR waste to the ponds.  Once it is placed into the coal ash ponds, the CCR waste may remain there for many years.  Over time, the heavier constituents of the CCR waste sink to the bottom.  Because of this process of sedimentation, coal ash ponds are sometimes called "settling ponds," or "treatment ponds."  Meanwhile, those particles that remain near the surface are ultimately channeled out of the ponds through permitted discharges into Herrington Lake.

40.     In the 1950s, a CCR settling pond at the E.W. Brown Station was constructed by damming the valley above Curds Inlet on Herrington Lake.  The Main Ash Pond, as it is known, is an unlined pond that, after successive expansions, has a surface area of approximately 114 acres and contains approximately 6 million cubic yards of CCR.  The Main Ash Pond stopped receiving coal ash sluice water in 2008.  Since that time, the Auxiliary Ash Pond, a lined pond, has replaced the Main Ash Pond as the active CCR settling site.

41.     Following KU's retirement of the Main Ash Pond, the company installed a landfill to receive and store newly generated CCR that is not directed to the Auxiliary Ash Pond.  The landfill is physically located on top of the Main Ash Pond.  In order to install the landfill on top of the Main Ash Pond, KU drained much of the water from the surface of the Main Ash Pond

and placed a cap on top of the 6 million cubic yards of accumulated CCR to store that waste in place.

42.     KU has taken other measures, in addition to capping the Main Ash Pond, to reduce the infiltration of water from the surface into the now-buried 6 million cubic yards of CCR.  Despite these measures to reduce surface infiltration, however, naturally flowing groundwater continues to enter the capped Main Ash Pond below the surface.  Once groundwater enters the Main Ash Pond, it contacts the now-buried CCR and then migrates away from the Main Ash Pond and ultimately (through multiple pathways) into Herrington Lake.[1]

43.     Coal ash wastewater such as that in the Main Ash Pond and the Auxiliary Ash Pond contains many toxic pollutants.  These include, but are not limited to, arsenic, lead, selenium, and cadmium.  Arsenic is a carcinogenic pollutant that causes heart problems and nervous systems disorders, and, when present in drinking water, is also linked to miscarriages, stillbirths, and infants with low birth weights.  Lead is a potent neurotoxicant that is highly damaging to the nervous system.  Selenium can damage the kidney, liver, and nervous and circulatory systems through long-term exposure.  Cadmium is a potential carcinogen and potent neurotoxicant pollutant that is highly damaging to the nervous system.  Exposure to these pollutants is known to have toxic effects in fish, other aquatic life, and wildlife, through waterborne chemical poisoning and through bioaccumulation in the aquatic food chain.  In addition, selenium in adult fish can kill developing fish embryos before they hatch and produce skeletal deformities in the young.

---

[1] Amec Foster Wheeler Env't & Infrastructure, Inc., Sitewide Groundwater Remedial Action Plan 2-3, 2-5, 2-9 to 2-10 (2015).

**KU's KPDES Permit for the E.W. Brown Station**

44.     KU's limited authorization to discharge wastewater from the E.W. Brown Station is permitted by KPDES Permit KY0002020 ("the Permit"), granted by KDEP pursuant to the state agency's delegated authority under the CWA, 33 U.S.C. § 1342(b).

45.     The Permit regulates discharges of pollutants from the E.W. Brown Station, specifying which wastewater streams may be discharged from which points at the plant (defined as permitted "outfalls").  It also establishes effluent limitations, as well as monitoring and reporting requirements for certain pollutants within those wastewater streams.  To this effect, the Permit defines three external outfalls at the E.W. Brown Station—Outfalls 001, 002, and 003— each of which authorizes certain discharges of pollutants at certain points to Curds Inlet on Herrington Lake.  Discharges from the Main Ash Pond and the Auxiliary Ash Pond are authorized to pass through Outfall 001.

46.     The current iteration of the Permit was issued on January 15, 2010.  The permit became effective on February 28, 2010.

47.     On August 28, 2014, KU applied for renewal of the Permit, which was set to expire on February 28, 2015.  However, because KDEP has not yet acted on this renewal application, the 2010 iteration of the Permit has been administratively extended and remains in effect today.

**KU's Discharges Into HQ Stream**

48.     Upon information and belief, both the Main Ash Pond and Auxiliary Ash Pond at the E.W. Brown Station have discharged pollutants, and continue to discharge pollutants on an ongoing basis, into HQ Stream.

49.     HQ Stream is a surface water body within the jurisdiction of the CWA that flows into Herrington Lake at HQ Inlet.

50.     KU's discharges of pollutants into HQ Stream from both the Main Ash Pond and Auxiliary Ash Pond are described and documented in the company's own reports and information submitted to the Kentucky Division of Waste Management in connection with an ongoing permitting process for construction of a landfill on top of the Main Ash Pond.  These reports include but are not limited to the 2013 Groundwater Assessment Report and the 2015 Groundwater Assessment Report Update.  Other reports and information that KU has submitted to the Kentucky Division of Waste Management further describe groundwater and surface water flows and contamination at the E.W. Brown Station site.[2]

51.     According to the 2013 Groundwater Assessment Report and the 2015 Groundwater Assessment Report Update, the Main Ash Pond and Auxiliary Ash Pond discharge to HQ Stream through at least two springs—Briar Patch Spring and HQ Spring—that are hydrologically connected to the ash ponds via groundwater.  This conclusion is supported by KU's own dye trace studies, hydrological analysis, and groundwater sampling data.[3]

52.     Significant concentrations of CCR pollutants have been measured in the springs affected by ash pond discharges.

53.     In Briar Patch Spring, KU's own sampling has detected arsenic and selenium at concentrations exceeding the respective Maximum Contaminant Levels ("MCLs") set for those

---

[2] See, e.g., Amec Foster Wheeler Env't & Infrastructure, Inc., Groundwater Assessment Plan 2-4, 2-5, 2-7 (July 17, 2012); Amec Foster Wheeler Env't & Infrastructure, Inc., Response to Technical Notice of Deficiency (NOD) No. 1: Groundwater Assessment Report 5-6 (Aug. 12, 2014); Letter from Ronald D. Gruzesky, Manager, Solid Waste Branch, Ky. Div. of Waste Mgmt., to W. Paul Puckett, Senior Eng'r, LG&E and KU Envtl. Affairs Dep't (July 8, 2014); W. Paul Puckett, LG&E and KU Envtl. Affairs Dep't, Groundwater Compliance Monitoring Report, 4th Quarter, 2014 (Aug. 17, 2015).
[3] Amec Foster Wheeler Env't & Infrastructure, Inc., Groundwater Assessment Report 3-4, 3-7 to 3-8 (Sept. 27, 2013); Amec Foster Wheeler Env't & Infrastructure, Inc., Groundwater Assessment Report Update 2-10, 3-3, 3-6, 3-8, 3-12, 3-13, 3-15 & 4-9 (June 2, 2015).

pollutants by EPA; boron at levels exceeding the EPA Child Health Advisory level; and lead at levels exceeding the EPA action level for drinking water.[4]

54.     In HQ Spring, KU's own sampling has detected arsenic, selenium, antimony, and thallium at levels equal to or exceeding the respective MCLs for those pollutants, and boron at levels exceeding the EPA Child Health Advisory level.[5]

55.     Significant concentrations of pollutants have been measured in HQ Stream, consistent with the results of sampling at Briar Patch and HQ Springs.

56.     In 2011, KU collected samples from HQ Stream.  The sampling detected high concentrations of boron and levels of sulfate and total dissolved solids exceeding EPA's secondary MCLs.  Because the samples were collected at a site downstream of Briar Patch Spring and HQ Spring and upstream of HQ Inlet, it is reasonable to conclude that CCR constituents migrate via Briar Patch Spring and HQ Spring into HQ Stream and, ultimately, into HQ Inlet and Herrington Lake.

57.     KU has not made available more up-to-date water quality sampling data for HQ Stream.  The company has stated that further water quality monitoring of HQ Stream was "deferred."

58.     Herrington Lake, which receives waters from HQ Stream, is the largest man-made lake in Kentucky and is a destination for recreational boat traffic.

59.      Herrington Lake is a popular destination for residents and tourists to fish, swim, and recreate in.  It is also home to aquatic species that reside in and feed in its waters.  It is also the source of drinking water for tens of thousands of people, including many who live near the E.W. Brown Station.

---

[4] *Id.* at 5-2 to 5-3 (Table E), App. E-1.
[5] *Id.*

60.     Under the CWA, KDEP must define its goals and expectations for a water body in part by designating appropriate water uses to be achieved and protected, in a manner that "protect[s] the public health or welfare, enhance[s] the quality of water and serve[s] the purposes of" the CWA.  33 U.S.C. § 1313(c)(2)(A); *see also* 401 K.A.R. 10:026; 40 C.F.R. § 131.10. KDEP must establish water quality standards for waterbodies "taking into consideration their use and value for public water supplies, propagation of fish and wildlife, recreational purposes, and agricultural, industrial, and other purposes, and also taking into consideration their use and value for navigation."  33 U.S.C. § 1313(c)(2)(A).  Water quality criteria are then set to protect those uses.  *Id.*  KDEP has designated Herrington Lake for Warmwater Aquatic Habitat and Primary/Secondary Contact Recreation.  Through such a designation, KDEP has indicated an expectation that Herrington Lake is both suitable for full or partial body contact recreation and can support indigenous warm water aquatic life.  401 K.A.R. 10:001 § 1(85).

**CCR Pollution in Herrington Lake**

61.     There is significant discharge of pollutants associated with CCR waste in the groundwater and surface waters located in the vicinity of the E.W. Brown Station.  KU's own data show significant concentrations of CCR pollutants present in multiple springs, streams, and at least one seep.  Many, if not all of these waters, are known to ultimately discharge into Herrington Lake.

62.     The major contaminants identified in these waters include arsenic, selenium, lead, cadmium, molybdenum, copper, boron, sulfate, and total dissolved solids ("TDS").  Boron, sulfate, and TDS have been found by EPA to be leading indicators of releases of contaminants associated with CCR wastes.  80 Fed. Reg. 21,302, 21, 342 (Apr. 17, 2015).

16

63. The dispersal of CCR pollutants by means of discharges into groundwater (and by subsequent discharges of contaminated groundwater to surface water) is especially pronounced at the E.W. Brown Station site because the site sits atop a karst geologic system. Karst is known for its unique hydrogeological properties, which make it possible for the ground beneath the E.W. Brown Station site to host a multitude of interconnected groundwater flows that channel CCR pollutants away from the ash ponds and other sources at the site, and ultimately discharge those pollutants into surface waters.

64. The process of discharging CCR constituents from the E.W. Brown Station site into groundwater occurs on an ongoing basis and has been occurring since CCR waste was first generated at the E.W. Brown Station in the 1950s.

65. Upon information and belief, the sources of this CCR pollution include, but are not limited to, the Main and Auxiliary Ash Ponds, the network of sluice channels and other conveyances that transport CCR across the E.W. Brown Station site, and other on-site facilities where CCR is handled, stored, treated, and/or disposed.

66. The contaminated water bodies are unable to rid themselves of CCR pollutants, despite the constant flow of water through them. In part, this is because the natural flow of groundwater and connected springs through contaminated portions of the E.W. Brown Station site provides a constant source of recharge for the contamination in Herrington Lake and nearby streams. Also, a portion of the CCR constituents that enter surface waters settles to the bottom, where the contaminants become deposited in the underlying sediments. These contaminated sediments provide an additional source of recharge for pollution in those waters.

67. Sampling in the vicinity of the E.W. Brown Station by KU, the Kentucky Division of Water, and Plaintiffs' environmental consultants has indicated that CCR

17

contaminants are present in groundwater, surface water, sediment, and the tissue of fish collected near the site, in significant concentrations that indicate likely toxic effects, such as developmental abnormalities and reproductive failure, on fish and wildlife that are exposed to the contamination.  Contaminated waters and sediments—in Herrington Lake as well as nearby CWA jurisdictional streams—are sources of ongoing, immediate exposure of pollutants to fish, other aquatic life and wildlife, and the people who make use of those waters.

68.     Remedial steps taken by KU at the E.W. Brown Station site in recent years have been and remain inadequate to address either the CCR contamination already present in Herrington Lake and adjacent streams, or the ongoing spread of contamination at the site.  KU recently undertook measures to reduce infiltration of water into CCR at several locations within the E.W. Brown Station site.[6]  However, subsequent testing indicates that CCR contaminants remain present in groundwater at the site.  Moreover, KU's remedial measures do not even purport to address, let alone effectively remediate, the ongoing flow of groundwater through CCR at the site and into surface waters.

69.     In addition, in April 2017, KU proposed to the Kentucky Division of Water a plan for additional monitoring and study of selenium pollution in Herrington Lake.  KU's study plan, however, does not propose any new remedial measures to address either the existing CCR contamination already present in Herrington Lake and adjacent streams, or the ongoing flow of groundwater through CCR at the site and into surface waters.

---

[6] *See* Amec Foster Wheeler Env't & Infrastructure, Inc., Site-wide Groundwater Remedial Action Plan 4-1 to 4-5 (Feb. 27, 2015).

# CLAIMS FOR RELIEF

## Count 1: Violations of CWA

70.    Plaintiffs re-allege and incorporate the allegations of all the preceding paragraphs of this Complaint, as well as all exhibits, as if fully set forth herein.

71.    HQ Stream is a navigable water as defined in the CWA, 33 U.S.C. § 1362(7).

72.    KU is discharging and has discharged pollutants, as defined in the CWA, 33 U.S.C. § 1362(6), (12), from the Main Ash Pond and the Auxiliary Ash Pond to HQ Stream. Upon information and belief, these discharges will continue after the date of the filing of this Complaint.

73.    Discharges of pollutants from the E.W. Brown Station into HQ Stream are not authorized by Permit KY0002020, and they are contrary to the limited authorization to discharge contained in that permit.

74.    KU has violated and is continuing to violate the CWA, 33 U.S.C. § 1311(a). Therefore, under the CWA citizen suit provision, 33 U.S.C. § 1365, a civil action may be maintained against KU.

75.    By committing the acts and omissions alleged above, KU is subject to an assessment of civil penalties pursuant to 33 U.S.C. §§ 1319(d) & 1365 and 40 C.F.R. § 19.4.

76.    In a letter postmarked November 2, 2015, Plaintiffs sent KU notice of the violations alleged in this claim for relief as required by 33 U.S.C. § 1365(b)(1).  Plaintiffs' notice letter is attached to this Complaint as Exhibit A.  The notice letter of November 2, 2015, superseded an earlier notice letter provided to KU by Sierra Club alone.  The earlier letter described the CWA violations alleged in this Complaint and Sierra Club's intent to sue KU, as required by 33 U.S.C. § 1365(b)(1)(A).  A copy of Sierra Club's earlier notice letter is attached

as Exhibit B.  Sierra Club's notice letter was sent to KU and its registered agent on October 20, 2015.

77.     Unless KU desists in its violations of 33 U.S.C. § 1311(a), Plaintiffs, their respective members, and their communities will suffer irreparable harm.

78.     Plaintiffs have no adequate remedy at law, and therefore equitable relief is warranted.

**<u>Count 2: RCRA Imminent and Substantial Endangerment</u>**

79.     Plaintiffs re-allege and incorporate the allegations of all the preceding paragraphs of this Complaint, as well as all exhibits, as if fully set forth herein.

80.     CCR is solid waste under RCRA, 42 U.S.C. § 6903(27).

81.     KU has contributed and is contributing to the handling, storage, treatment, transportation, or disposal of solid waste at the E.W. Brown Station site that may present an imminent and substantial endangerment to human health and the environment.  Upon information and belief, this endangerment will persist after the date of the filing of this Complaint.  Therefore, under the RCRA citizen suit provision for imminent and substantial endangerment, 42 U.S.C. § 6972(a)(1)(B), a civil action may be maintained against KU.

82.     In a letter postmarked October 26, 2016, Plaintiffs sent KU notice of the endangerment alleged in this claim for relief as required by 42 U.S.C. § 6972(b)(2)(A). Plaintiffs' notice letter is attached to this Complaint as Exhibit C.

83.     Remedial steps that KU has recently undertaken or are currently underway at the E.W. Brown Station site are inadequate to abate the endangerment.  None of these measures have characterized the full extent of contamination in and around the E.W. Brown Station site or

abated either the CCR contamination already present in Herrington Lake and adjacent streams, or the ongoing spread of contamination at the site.

84.     Unless KU eliminates this imminent and substantial endangerment to human health and the environment, Plaintiffs, their respective members, and their communities will suffer irreparable harm.

85.     Plaintiffs have no adequate remedy at law, and therefore equitable relief is warranted.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs Kentucky Waterways Alliance and Sierra Club respectfully demand that this Court enter a judgment:

a)      declaring that KU's discharges of pollutants into HQ Stream from the Main Ash Pond and the Auxiliary Ash Pond at the E.W. Brown Station are not authorized by KPDES permit KY0002020 and violate the CWA, 33 U.S.C. § 1311(a);

b)      ordering that KU take all actions necessary to comply with the CWA, including ceasing all discharges that are not authorized by KPDES permit KY0002020;

c)      declaring that KU's past and present handling, storage, treatment, transportation, or disposal of CCR at the E.W. Brown Station site may present an imminent and substantial endangerment to health or the environment in violation of RCRA, 42 U.S.C. § 6972(a)(1)(B);

d)      ordering that KU take all actions necessary to eliminate the endangerment to health and the environment in the vicinity of the E.W. Brown Station, including ordering that KU determine and implement the most expeditious, cost-effective, and environmentally sound means to eliminate the ongoing migration of CCR pollutants into groundwater, surface water, and

sediments; and to fully abate the endangerment associated with CCR pollutants that have already migrated into groundwater, surface water, and sediments near the site.

e)      assessing KU civil penalties under 33 U.S.C. §§ 1319(d) & 1365 and 40 C.F.R. § 19.4 not to exceed $37,500 per day for each violation of the CWA within the five-year statute of limitations period;

f)      awarding Plaintiffs their litigation costs and reasonable attorney fees incurred in prosecuting this action, pursuant to 33 U.S.C. § 1365(d) and 42 U.S.C. 6972(e); and

g)      ordering such other relief as the Court may deem just and proper.


Dated: July 12, 2017                              Respectfully submitted,

                                                  s/ Joe F. Childers
                                                  JOE F. CHILDERS (KY 11850)
                                                  JOE F. CHILDERS & ASSOCIATES
                                                  300 Lexington Building
                                                  201 West Short Street
                                                  Suite 300
                                                  Lexington, Kentucky 40507
                                                  Telephone: (859) 253-9824
                                                  Facsimile: (859) 258-9288
                                                  Email: childerslaw81@gmail.com

                                                  THOMAS CMAR (IL 6298307)
                                                  EARTHJUSTICE
                                                  1101 Lake Street, Ste. 405B
                                                  Oak Park, IL  60301
                                                  Telephone: (312) 257-9338
                                                  Facsimile: (212) 918-1556
                                                  Email: tcmar@earthjustice.org
                                                  *To be admitted pro hac vice*

                                                  BENJAMIN LOCKE (NY 5042080)
                                                  EARTHJUSTICE
                                                  1617 John F. Kennedy Blvd., Ste. 1130
                                                  Philadelphia, PA  19103
                                                  Telephone: (215) 717-4528
                                                  Facsimile: (212) 918-1556

Email: blocke@earthjustice.org
*To be admitted pro hac vice*

*Counsel for Plaintiffs Kentucky Waterways Alliance and Sierra Club*

MATTHEW E. MILLER (DC 1015222)
SIERRA CLUB
50 F Street NW, 8th Floor
Washington, DC 20001
Telephone: (202) 650 6069
Facsimile: (202) 547-6009
Email: matthew.miller@sierraclub.org
*To be admitted pro hac vice*

*Counsel for Plaintiff Sierra Club*